MORROW, RUSSELL O., Associate Judge.
This is an appeal from an order entered in the County Judge’s Court of Palm Beach County, Florida, granting appellee’s petition for construction and revocation of a portion of the will of Ruth Y. Stewart. The appellant is administrator, C.T.A. of the said estate. The appellee is the brother and heir at law of the deceased, a beneficiary under her will, and a life tenant of her testamentary trust.
Paragraph FIFTH of the will provides as follows:
“FIFTH: All the rest, residue and remainder of my estate, both real, personal and mixed, of every nature and wheresoever situate of which I may die seized or possessed, including without limitation all property acquired by me or to which I may become entitled after the execution of this my will and all property herein attempted to be disposed of, the disposition whereof by reason of lapse or other acts, shall fail to take effect, and including the property of which I have the power of appointment under the Will of my husband, FREDERICK M. STEWART, deceased, I give, devise and bequeath to my Trustees hereinafter named, IN TRUST NEVERTHELESS, for the following uses and purposes :
(a) My Trustees shall receive, hold, manage, invest, reinvest and administer the same and collect the income thereof and pay the same to my brother THOMAS YOUNG, in monthly or quarterly installments as he may elect during the term of his life;
(b) In the event that the amount of income payable to my brother, THOMAS YOUNG, from this trust shall be less than TWENTY THOUSAND DOLLARS ($20,000.00) in any one year, calculated from the date of my death, then I authorize and direct my Trustees, upon the written request of my said brother, to invade and use so much of the principal of said trust fund as may be necessary to make up the difference between the sum of TWENTY THOUSAND DOLLARS ($20,000.00) and the amount of the income payable to him from said trust fund.
(c) I further authorize and empower my Trustees to invade and use the principal of said trust and to pay over to my brother, THOMAS YOUNG, such additional amounts and at such times, as they, in their sole and exclusive discretion and judgment, may deem necessary or advisable to meet any emergency which may arise, such as unusual medical or other expenses incurred by my brother.
(d) Any payments of principal which may be made pursuant to subparagraphs (b) and (c) hereof, shall be absolute and free from all trusts, and upon making such payments my Trustees shall be fully released and discharged from all further liability or accountability therefor.
(e) Upon the death of my said brother, the said trust shall terminate, and I direct *783 and empower my Trustees thereupon to divide, pay over and distribute the principal of said trust as then constituted, together with any accumulated or accrued income, among such of my relatives as may then be surviving and among such charitable, educational or religious corporations, and in such proportions, as my friend and attorney, WILLIAM A. SHEA, shall, in his sole and exclusive discretion and judgment, fix, designate and determine.”
The chronology of events are here stated:
1. Ruth Y. Stewart died March 1, 1968;
2. Her will dated October 8, 1958, was admitted to probate on March 20, 1968;
3. On August 29, 1968, appellee filed his petition for construction and revocation wherein he renounced any disposition and bequest made to him under said will and wherein he petitioned that paragraph FIFTH (e) above be revoked and declared invalid;
4. On September 18, 1968, appellant as respondent filed his answer to said petition;
5. On December 19, 1968, appellant filed his amendment to said answer which amendment embraced a revocable designation by William A. Shea of those relatives and corporations which were to take the principal of the trust at its termination. This designation was executed on September 3, 1968;
6. On October 22, 1969, the distinguished probate judge entered his order adjudicating paragraph FIFTH (e) to be null and void as violating the rule against perpetuities. Said order also held that the power of appointment given to Shea could not be exercised until the death of the brother and that Shea’s attempt to do so was void. The trial court found it unnecessary to decide the question of whether the power was impossible of performance because of ill-defined, vague and ambiguous classes of recipients described therein. This latter question formed the basis of appellee’s petition; the rule against per-petuities not being raised therein.
The questions herein to be decided are: (1) does paragraph FIFTH (e) violate the rule against perpetuities?; (2) is the designation by Shea valid?; (3) was the description of the classes of recipients named in the power of appointment ill-defined, vague and ambiguous?
As to question (1) the trial court found that paragraph FIFTH (e) was an attempt by the decedent to convey a power of appointment to Shea and that this was subject to a condition precedent, to-wit: the death of Thomas Young and that the power does not exist until such death. The court further found that since Shea might die before Young there would be no one to exercise the power and it violated the rule against perpetuities.
The trial court was correct in holding that the power was a special power only exercisable by Shea. However, the fact that Shea may die before Young and therefore the power would never be exercised, is not violative of the rule. If Shea died first, without exercising the power, the trust residue would pass by intestacy at the death of Young. The rule provides that no interest is good unless it must vest, if at all, not later than 21 years after lives in being at the creation of the interest. We cannot strike the power down simply on the ground that it may never vest. In this case the interest must vest within the lifetime of Young plus 21 years if it is going to vest at all. (Van Roy v. Hoover, 1928, 96 Fla. 194, 117 So. 887.)
The order appealed correctly states the following:
“One of the essential elements of the Rule against Perpetuities is that at the time the future interest is created it must appear that the condition precedent to vesting must necessarily happen, if it *784 happens at all, within the period described by the rule.”
As long as Shea makes a valid designation the interest can and must vest within the time prescribed by the rule. The court cannot void a power where the vesting must happen, if at all, within the rule. “If at all” are the life-giving words to an interest, where the only possible way it can vest falls within the rule and the only alternative is that it can never vest. In this event it would vest by intestacy. The power granted herein does not violate the rule against perpetuities.
The power of appointment was set forth in the Will of the deceased and it came into existence upon her death and can be exercised by the donee from the date of said death subject to the terms of the grant of said power and applicable law.
Question (2) now arises. Was there a valid designation by Shea on September 3, 1968, prior to the death of the life tenant Young?[1] The wording of the *785 grant of power (Paragraph Fifth (e)) clearly states that the trust shall terminate upon the death of the testatrix’s brother and the trustees thereupon to distribute the principal to those beneficiaries (within the designated classification), as Shea shall designate. It does not say “As Shea shall thereupon designate”, or “at that time designate”. We do not construe said paragraph to mean that Shea must await the death of Young to exercise his power of appointment but he may do so. If two constructions are possible, the one must be followed which gives effect to the intent of the testatrix. Here such intent was that Shea should designate the contingent beneficiaries. To say that the power did not exist or could not be exercised before the death of Young would defeat or curtail such intent.
In Brown v. Saake, Fla.App.1966, 190 So.2d 56, we have this holding:
“If the will is acceptable of two constructions, one of which would turn it into an illegal perpetuity and the other make it valid and operative, the latter should be adopted. Every presumption should be indulged in favor of validity. It should be upheld unless it clearly violates some rule of law or public policy and, if possible, give effect to the intent of the testator.”
In 96 C.J.S. Wills § 1070, p. 726, the question is well summarized:
“A testamentary power is not exercisable before the time intended by the donor; and it may be exercised only at such time or within such period as may be prescribed by the will created and conferring it. In the absence, however, of any restrictions, express or implied, in the donor’s will, as to the time of exercise, a power is exercisable at any time during its existence and continuance. A power granted a life tenant may be exercised before the estate is settled and the property delivered to the life tenant; but it has been held that the life tenant of a residuary estate may not exercise a power of disposal until the estate is settled, even though he is the executor. A power to appoint a remainder may be exercised before the termination of the precedent estates.”
In this case the only time limitation for the exercise of the testamentary power is contained in the following: “Upon the death of my said brother, the said trust shall terminate, and I direct and empower my trustees thereupon to divide, pay over and distribute the principal of said trust * * to those beneficiaries designated by Shea. In other words, upon the death of Young the trustees must forthwith make distribution and Shea must have already exercised his power or must immediately do so. He could not wait any protracted time to act but would have to proceed forthwith in order that the will of the testatrix be carried out. The designation by Shea is valid.
The classes of eligible recipients are adequately defined. The description of relatives who survive the brother, is specific and clear. The same is true of the three types of corporations. The fact that the number of such corporations is extremely high, does not render the description vague or uncertain.
*786 “There can be a trust of which the beneficiaries are relatives of a designated person among whom the trustee is authorized to select who shall take and in what proportions.” (Restatement of Trusts, Second, Section 121.)
In his treatise on Trusts, 4 Scott, § 396, page 3023, Third Edition, Professor Scott makes this observation:
“A testator may devise or bequeath property in trust for charitable purposes without designating the particular purposes to which he wishes the property to be applied. He may leave the property to trustées for such charitable purposes as they may select. Such a disposition is valid according to the great weight of authority. If the trustee is ready and willing to make the selection, there is no reason why he should not be permitted to do so. This is true where the testator designates the general nature of the charitable purposes to which he desires the property to be applied. It is true also where the trustee is left free to devote the property to any charitable purpose he may select.”
The order appealed is reversed.
WALDEN and OWEN, JJ., concur.

. “WHEREAS Ruth Y. Stewart died on March 1, 1968, a resident of Palm Beach, Florida leaving a last will and testament dated October 8, 1958 which was duly admitted to probate by the County Judge’s Court of Palm Beach County, Florida on March 20, 1968 and Manley P. Caldwell of Palm Beach, Florida duly appointed Administrator CTA thereunder on March 21, 1968; and
“WHEREAS by Article ‘FIFTH’ of her will the decedent left her residuary estate in trust for the benefit of her brother, Thomas Young, who survived her; and
“WHEREAS paragraph ‘(e)’ of said ARTICLE ‘FIFTH’ provides as follows:
“(e) Upon the death of my said brother, the said trust shall terminate, and I direct and empower my Trustees thereupon to divide, pay over and distribute the principal of said trust as then constituted, together with any accumulated or accrued income, among such of my relatives as may then be surviving and among such charitable, educational or religious corporations, and in such proportions, as my friend and attorney, WILLIAM A. SHEA, shall, in his sole and exclusive discretion and judgment, fix, designate and determine,
and
“WHEREAS the undersigned, WILLIAM A. SHEA, referred to in said paragraph ‘(e)-’ desires to exercise the power thereby granted to him to direct the disposition of the remaining principal and income of said trust, expressly reserving, however, the power to amend, revoke, cancel or change this instrument at any time and from time to time during his lifetime, it being his intention that only such persons and corporations shall be entitled to participate in the principal and income of such trust as shall be fixed, designated and determined by that instrument which shall be in effect at the time of his death.
“NOW, THEREFORE, the undersigned, William A. Shea, hereby directs the trustees under the will of said Ruth Y. Stewart, deceased, to pay over and distribute the principal of said trust, as the same shall be constituted upon the death of said Thomas Young, together with any accumulated or accrued income as follows:
(a) 25% to Loretta Wessel, a cousin of said Ruth Young Stewart, who presently resides at 68 Chapel Street, Albany, New York, if she shall be living at the time of the death of said Thomas Young, or if she should not then be living then said 25% shall be divided into four equal shares and one of such equal shares shall be given to each of the charitable organizations designated in ‘(c)’, ‘(d)’, ‘(e)’ and ‘(f)’ below.
(b) 25% to Mrs. Raymond Law, a cousin of said Ruth Young Stewart, who presently resides at 39 102nd Street, North Troy, New York, if she shall be living at the time of the death of said Thomas Young and if she shall not then be living to such of her issue as shall then be living in equal part per stirpes, or if no such issue should then be living then said 25% shall be divided into four equal shares and one of such equal shares shall be given to each of the charitable organizations designated in ‘(c)’, ‘(d)’, ‘(e)’ and ‘(f)’ below.
(c) 10% to Hofstra College, located in Hempstead, New York.
(d) 10% to the National Foundation, Inc. (March of Dimes) located in New York, New York.
(e) 10% to Irvington House, located in New York, New York to be used for research purposes.
(f) 10% to the Palm Beach County Association for Retarded Children, Inc., located in West Palm Beach, Florida.
(g) 10% to the Palm Beach County Comprehensive Community Mental *785 Health Center, Inc., located in West Palm Beach, Florida.
New York, New York
Dated: September 3, 1968
/s/ William A. Shea
William A. Shea
STATE OP NEW YORK 1 COUNTY OP NEW YORK J gg.
On this 3rd day of September, 1968, before me personally came WILLIAM A. SHEA, to me known, and known to me to be the individual described in and who executed the foregoing instrument, and he duly acknowledged to me that he executed the same.
Norman Friedman
Notary Public, State of New York
No. 03-6415450
Qualified in Bronx County
Commission expires March 30, 1969.”